Thanks for working with us on the scheduling. So, our case today is the Attorney General of the State of New Jersey v. Dow Chemical 24-1753. Counsel, whenever you're ready. Morning, Ms. Mitchell. Good morning, Your Honors. Tadzin Mitchell on behalf of Dow Chemical Company. May it please the court. I'm going to be presenting argument this morning on behalf of all of the defendants. I'd actually request three minutes of rebuttal time if that's permissible. Good morning, Your Honors. The district court's failure to credit Dow's theory of the case infected its entire analysis of the application of the federal officer removal statute, which this court has repeatedly held should be liberally construed in favor of a federal forum, drawing all inferences in favor of the removing party. What do you mean by failing to credit Dow's theory of the case? So, throughout Dow's notice of removal, we pleaded that we provided a compliant with Mil-Spec specification TCA product that it was used by the military and that there have been detections of TCA and 1,4-Dioxane at military bases throughout New Jersey. Can I take a step back and ask you a factual question? Yes, Your Honor. So, Dow inhibited TCA in 1951, right? Correct, for cold cleaning. Okay. Was that with the 1,4-Dioxane? It was inhibited with 1,4-Dioxane. That was 1951? In 1951. I mean, the composition wasn't exactly the same. The chemical composition wasn't the same, but yes, for cold cleaning purposes. Okay. All right, I interrupted you. You were answering, I don't know if you were finished answering Judge Restrepo's question. I thought you were, but I just want to make sure. Sure, but just to emphasize, in the notice of removal, we pleaded that we produced TCA to comply with Mil-Spec, and that is the archetypical case, the classic case that this court has said, of federal officer removal, where you're providing a product for the government, that unless private industry provided it, the government would have to do it on its own. The district court is of the opinion that you provided this, or you modified it, to comply with Rule 66 in Los Angeles, right? That's correct. That's wrong? That is wrong, because what we plead in the notice of removal, is that we created chloroethene VG to comply to military specifications. There was a predecessor product, SA-1192, and an iteration SA-1192A, that we plead in our removal, was used in response to Rule 66 in Los Angeles. But we plead in the notice of removal, and plausibly so, and I can point you to government statements that are consistent with that, that we produce chloroethene VG to correspond to the military specifications that the government required. And I also think it's important to put this in context. I mean, at most, what the plaintiff's theory of the case, which this court shouldn't be crediting at this stage, is that we began selling this product in 1966. That would mean we are in the middle of the Vietnam War. There's an executive order that comes down saying all federal contractors must comply with local regulations. Within a year, LA County issues a rule that says, basically effectively bans TCE, which the War Production Board had said in World War II, is something that has to be prioritized for the nation's defense. And industry and the military were scrambling. In 1967, the Department of Defense issued a report to Congress, to the Armed Services Committee, saying that we were working with industry to come up with a product that would meet our vapor degreasing needs while complying with the executive orders. So all of this was happening at the same time. Go ahead, Judge. Does Dow really face any risk of state court prejudice? Yes, Your Honor. This is a case brought by the state of New Jersey, claiming injury to the entire state of New Jersey's natural resources. This is exactly the kind of case that motivated Congress to allow defendants to have a federal defense heard in a federal forum. We have at least a colorable federal contractor defense that we plan to present in this case. And hearing, you know, having New Jersey residents in a New Jersey state court hear a claim by New Jersey about injury to the entirety of the New Jersey resources system, is exactly the kind of case that we need a federal court's protection in order to litigate our federal defense. That's what motivated the federal officer removal in the first place and its subsequent amendments that have made it more liberal in its application. As the Supreme Court said in Willingham, the entire purpose behind the federal officer removal statute is to allow those who are working with the federal government to assist it in carrying out its duties to have a federal forum to defend its case under a federal defense. Is this a standard of close supervision or close control? No, Your Honor, I don't think that's the correct standard. In the context of regulated entities, the court in Watson talked about that. So if you are a regulated entity like the tobacco industry, or like a chemical company performing a cleanup pursuant to the regulatory laws, in those circumstances I think the court has said close supervision is at least sufficient. I don't think it's ever said that it's necessary. But when it comes to provide a government contractor providing a product to the government, close supervision is not required. This court's decision in Pat did not adopt that standard. Instead, what this court said in Pat is, are you providing a product to the government that if you didn't provide it, the government would have to go out and do it itself? I think that's plainly the case here in the middle of an air-heavy war where the federal government is saying, working together with industry to come up with an alternative for TCE, which the War Production Board had said in the middle of World War II, you can't, without our approval, you cannot provide TCE. You have to come through the War Production Board in order to satisfy the needs of the nation's defense. Counsel, let me ask you a question. Your brief talks about stepping in for the military with respect to this product, but you all attach sales records, and I looked at those sales records, and it looks like the vast majority of them are not to the military. It's to private entities or outside agencies. Outside agencies, does that matter at all? If not, why not? Your Honor, first of all, under this court's McGuire case, subcontractors can avail themselves of the federal offer of certificates, and many of those sales records that are in the third volume of the appendix, first of all, they're not complete, but many of them do reflect sales to Lockheed Martin, to Northrop Grumman, to Boeing, which were federal contractors. Also, we know that there have been detections of TCA and dioxane at military installations in New Jersey, so I think at least under the pleading standard, which is what governs the removal question here, we plausibly pleaded that we provided TCA to the federal government that used it in New Jersey. On top of that, under this court's, excuse me, the Supreme Court's Dart-Cherokee Basin case, we didn't have to prepare evidence at all in support of our allegations. Those sales records were what we were able to produce. I don't think it's complete, and what the court said in Jefferson County v. Acker is that you don't have to have an airtight case on the merits in order to proceed under the liberal pleading standard of the notice of removal. So I acknowledge, Your Honor, that there are significant sales to private industry, but we also have an EPA report in the joint appendix that says that we sold to the federal government 8.5 million pounds of TCA in 1976 alone, and I think all of that sufficiently alleges, for purposes of pleading, that we provided this to the federal government. And I don't take the state to be really disputing that we provided this for military uses. You know, they talk about how in the sales records we provided there were only a few sales to the government, but they also acknowledge in their own briefing when they cite to those sales records that there were significant government contractors included within those sales records as well. Let me ask you a question. How do you distinguish a case like, I think it was the Hoboken case written by Judge Bevis, that talked about the provision of products, even products that are, you know, highly regulated, provision of gasoline to the government. That alone isn't sufficient to put you under this federal removal statute. Why isn't this case like that? So the Hoboken case rested entirely on the plaintiff's disclaimer. The court didn't take issue with whether the federal officer removal statute was otherwise satisfied. I think the disclaimer that the states have tried to offer in this are distinct from Hoboken in a number of respects. First of all, it's not in their complaint. Their complaint only disclaims, and it's really not even a disclaimer, but they say the natural resources of this state don't include those lands that are on or underlying federal lands. But disclaiming an injury to federal lands is far from distinguishing all injuries caused by federal use. So the disclaimer in their complaint is insufficient. But the Hoboken case also rested on an amicus brief that provided evidence that in that case the federal usage was only like 1 800th of the issue of the global fossil fuels issue. And again, that information is not in the record. And I think reading Hoboken to create some sort of exclusion for taking advantage of the federal officer removal statute in that context would put this court in square conflict with the recent decision out of the Fourth Circuit in the non-AFFF case brought by 3M, or that was removed by 3M. We submitted a 28-J letter on that case, and I think it powerfully supports our position. Because there, the court reversed, saying the district court didn't credit defendants' theory of the case, which is that under plaintiff's allegations, the whole reason that they're able to bring this claim with respect to the entire state is because they allege that dioxane migrates far distances and persists in groundwater. That's their theory. They didn't bring, for example, a case about a single site where it's obvious that the contamination comes from They're claiming injury to the entire New Jersey natural resources system. In light of that, coupled with our allegations in the notice of removal, that we provided TCA to the federal government to comply with military specifications brings this case within the heartland of the federal officer removal statute. This is a case where had Dow and industry not stepped up, anticipated the needs of the government, and provided them with this product, the government would have had to provide it, would have had to make it for itself. You can't conduct an air war without a vapor degreasing solvent. There are studies that show that using the pre-existing cold cleaning solvents wouldn't work with the existing equipment. It was impractical and financially infeasible to retrofit them. So the district court seemed to come to the conclusion that Dow never was really acted under the control or the supervision of the government, right? And he cites an affidavit from Mr. Hoff, I believe, as the only evidence, and it was a brief meeting. What's wrong with that analysis? Two things are wrong with that analysis, Your Honor. First is the district court said Dow didn't produce sufficient evidence to show, and this is a pleading standard. So I think that's the first error, is putting defendants to a showing of proof as opposed to a showing of pleading. And we plainly plead that we worked with the federal government to develop the military specifications and then produced TCA to conform to those specifications. But the second problem, and I think this really infected the district court's analysis of the arising under PRONG, the related to PRONG, and the government contractor defense. So this is what the district court says at JA-13, and he repeats a similar statement at JA-18, that the government did not specify with what method Dow should inhibit or stabilize the TCA. Instead, says Dow made that decision on its own. But that framework has been expressly rejected by this court. In this court's decision at PAPP at page 813, the court said, quote, we have explicitly rejected the notion that a defendant could only be acting under a federal officer if the complaint of conduct was done at the specific behest of the federal officer. Then again, in the relating to PRONG, the district court again relies on the fact that Dow was the one who chose 1,4-Dioxane as the inhibitor. But again, in the Federal Defenders Association case, this court again said, we disagree that the federal community defender is required to allege that the complaint of conduct itself was at the behest of the federal agency. So the district court's core problem with defendant's theory of the case was something that this court has squarely rejected as being required in order to take advantage of the federal officer removal statute. One thing I also think is important to underscore is this court has made clear that for purposes of the government contractor defense, it is not necessary for the federal government to originate the specifications or to even specify the particular issue in this case. If we agree with you, does that mean that every product that's made to government specifications, every contractor who sells a product to the government that's made to government specifications could remove? No, Your Honor. May I answer? Yes. No. So there are multiple limits built into this defense. First is the arising under PRONG. And maybe if you provide a product that the government needs, you can satisfy that PRONG. The second is the related to PRONG, which has real teeth. The Fifth Circuit rejected removal recently on the related to PRONG. That means that just because you provide a product to the federal government, unless this case is related to the provision of that product to the federal government, you can't avail yourself of the defense. And the reason this case is related to the provision of TCA to the federal government is because they're claiming natural resources injury to the entirety of the state. In addition, the federal defense requirement itself provides limitation. For the government contractor defense, there are three elements. Under the Supreme Court's decision in Boyle, you have to show that there were reasonably precise specifications. That has real teeth. You have to show that the contractor conformed to those specifications and that they warned the government of all known risks. So it absolutely operates as a limit. And that's why in, for example, the Moore case, the court held that, you know, a Medicaid recipient creating a patient portal isn't actually doing the government's work because without the patient portal, the government just wouldn't have used a patient portal. Here, we know that the government needed this product. It was in the Department of Defense's report to the Committee on Armed Forces of the Congress. They were working with industry to solve this important defense-based need. In light of those allegations in our notice for removal, which are at least plausible and supported by sufficient evidence, even though that's not required at this stage, I think this case is the classic case of federal officer removal. And we're entitled to litigate our defense in federal court. No further questions? Do you have something, Judge Fricke? Wondered if New Jersey stipulates to an identical disclaimer as they did in Hoboken. Do they win? I don't think so, Your Honor. So first of all, after the Supreme Court's decision in Royal Canin, it would need to be in the complaint, not something that they can stipulate to at the podium. In addition, the Hoboken case rested, as I mentioned, on the fact that the record established in that case that there was only one eight hundredth of a contribution by the sales to the federal government. And what Judge Vivas said in that opinion is we're not going to hang our jurisdiction on basically, they said so small a slice of the pie, but basically on a de minimis use. Here, we know that there has been TCA and dioxin contamination at military bases throughout New Jersey. We've identified three of them in our notice of removal. I don't think they can take the same approach as Hoboken and somehow get this case out of federal court. There's going to be extensive litigation if they do that about whether there is any federal mil-spec TCA in the natural resources that they're asking us to spend billions of dollars to remediate. That is, at its core, a dispute about the scope of our federal defense. And questions about causation and apportionment that directly relate to our federal defense are issues that we are entitled to a federal forum to get a federal court to resolve. Is this caused by federal TCA or not? And if so, how much? Those are the kinds of questions the court will be forced to answer, even with a disclaimer. And for those questions, we're entitled to a federal forum. Why isn't three places in the entirety of the state of New Jersey also a small part of the pie? It's not, Your Honor. So, for example, and I apologize if I say this wrong, but there is the Kirkwood-Chancey Aquifer that's like 3,000 square miles, and it is adjacent to the McGuire-Dix-Lakehurst military base. And at that Naval Engineering Center, there have been, its TCA has been identified as a contaminant of concern. So I don't think the state is going to be able to come up here and tell you that they can say there's not a morsel of federal government TCA in the entire Kirkwood-Chancey Aquifer. And those are the kinds of questions that are going to have to be litigated in order to, even if they're able to make a disclaimer, we don't think they've done that here. We don't think they can do that here. But even if the court accepts that disclaimer, it's going to require the court on remand to decide whether we have the availability of a federal defense, and if so, what the scope of that federal defense is. So I don't think the three that we've identified are significant. It's also not exhaustive. And again, the Supreme Court in Jefferson County v. Acre said that you don't have to have an airtight case on the merits in order to remove, that the entire point is to give us a federal forum for those determinations of fact and law to be made by a federal court. Thank you. We'll see you on rebuttal. Thank you, Your Honor. Good morning, Mr. Walker. Good morning, Your Honor, and may it please the court. Brenner Walker on behalf of the Appalee, the State of New Jersey. I'd like to begin by answering Judge Skirica's question. The State of New Jersey believes that the disclaimer on page 38 of its appellate brief is as broad as the city of Hoboken case, but we're certainly willing to make a stipulation as broad as the city of Hoboken case. And that's the state of New Jersey. It was dispositive. It was dispositive in Hoboken. The court there didn't hang its jurisdiction on such a small slice of the pie, and this court shouldn't either. So are you making that representation right now? Absolutely, Your Honor, yes. But I think to go back to the acting under prong, because that's what the district court looked at. And Dow loses under that as well. Dow has, you know, I think Dow faults the district court for not crediting its theory of the case. But in nearly the same breath, Dow's theory of the case is two things. It designed a product to comply with a federal procurement standard, and it made a handful of sales to the federal government, as Judge Montgomery Reeves recognized. And the truth, even apart from crediting Dow's theory of the case, in the light most favorable to Dow, the standard that this court must follow, its purported relationship with the federal government is that of a regulator and a regulated entity, and nothing more. And that's categorically insufficient under the Supreme Court's unanimous opinion in Watson. And take the sales, though. The product was designed in 1951. It's been using—Dow was using dioxane since 1951. And it sold on the open market, as this court recognized in the city Hoboken decision, and not specifically to the federal government. Do you dispute that Dow helped the government to produce an item that it needed? So I think that the context of PAP—and I want to be clear, I think no is the answer, Your Honor—it may have sold the product to the government, but it did not produce a government—an item that the government needed within the meaning of PAP. And there's factual aspects of PAP that are very distinguishable from this case, but there's also a legal aspect of it. Let's start with the factual aspect. PAP involved the C-47 Skytrain. That's what the U.S. Army Air Force used to win World War II, to drop paratroopers into France. But from the legal standpoint, PAP notes that the C-47 was designed under the, quote, specific supervision of the U.S. Army. And in fact, that observation is carried forward in this court's recent opinion in Moore. When Moore said that a mere contractual relationship with the federal government is insufficient to show acting under, and that the court must instead look to the nature of the relationship, it gives a couple of examples. The Moore court cited, of course, the city of Hoboken decision, but it also cites the PAP decision. And when it cites the PAP decision, it says producing an item for the government under the specific supervision of the government is what is important. And we cite at page 31 of our brief, we cite and discuss Boeing's briefing in PAP. And what Boeing pointed out in that case was that the government exercised exclusive control of the design process at all times, and prohibited Boeing, or I guess Douglas Air Corp., its predecessor, from putting any asbestos warnings on the plane. That's simply not the case here. And so Dow hasn't alleged an unusually close relationship. Dow, I think, admitted as much just a moment ago when it said that's not the standard anyway. But in Maglioli, this court remanded to state court because the defendant there had not alleged an unusually close relationship with the CDC. And Dow's sales fair know better. It's sold on the open market. A mere contractual relationship is not enough. And in fact, to point to your question, Judge Montgomery-Reeves, Dow's logic would bring a whole new wave of cases into federal court. And that's, in fact, what the Fourth Circuit recognized in the Mayor and City Council of Baltimore case. Dow's logic would bring every seller, quote, every seller of a product into federal court, so long as the government was one of its customers. Ninth Circuit had a similar reflection in the County of San Mateo case, where an arm's length business arrangement for widely available commercial products is not an acting under relationship. What Dow was doing here was selling a pre-existing product. And pre-existing is key. It designed the product in 1951. If there's one page of the joint appendix to read, it's page 250. On that page, these are Dow's marketing materials. This isn't something that the plaintiffs came up with. This isn't a matter of crediting Dow's case. Dow may not have had to provide evidence to support its allegations, but it did. And just like a federal court plaintiff, if its attachments show that its allegations are not plausible, the court should consider that. And what page 250 of the appendix says? And I quote, chlorothene VG was initially used in Los Angeles County to comply with air pollution regulations since August of 1966. But that is the very page in Exhibit G that Dow cites when it says that it began manufacturing chlorothene VG in 1968. And it, in fact, quotes part of that very page for saying that it designed the product to comply with Fed spec and And to go to your question about the Hoff affidavit, there are four paragraphs, as I recall, in the Hoff affidavit. It's a single meeting. It's undated. And all he says is that Dow and other manufacturers provided data. As the district court correctly recognized, that's not an acting under relationship. Look at the things where the Supreme Court has said that an acting under relationship requires subjection, guidance, or control, not providing a little bit of data. And in fact, the Supreme Court in Watson gives FIFRA regulations as an example, where regulated entities are required to provide extensive information. Dow probably provided some information according to the Hoff affidavit. But under Watson, that's not good enough. And it's worth comparing to the places where providing a product or complying with strict government dictates is enough. Consider the Winters case. It's the Fifth Circuit decision. It's in some ways the quintessential appropriate removal. There, chemical companies who had to make Agent Orange during the Vietnam War were required to produce unprecedented quantities at unprecedented concentrations of the active ingredient under, quote, the threat of criminal sanctions. That is an acting under relationship. That's not what Dow's alleged here. I want to briefly turn, if I can, to the four relating to element. Before you turn, I just have one more question about the disclaimer. Yes. Your friend on the other side said, nope, it has to appear in the complaint. It doesn't appear in the complaint. As I understand the Supreme Court's recent case in, I think it was Royal Canin or something like that, or Canin, it made very clear that you could have an amended complaint that removes jurisdiction. Why not ask to remand and make the disclaimer extremely clear? Well, I'd like to answer that with two points. The first is that I don't think that's necessary. The disclaimer on page 38 of our brief and the disclaimer that I'm going to make here, made here a moment ago, I think that's sufficient. I think it's more efficient to credit that disclaimer the way that other courts have. We cite the Raul Court out of the Seventh Circuit as an example. But to answer the question, the second point that I want to make is, if necessary, we will. This case belongs in state court. This is a state environmental enforcement action. The New Jersey Attorney General brought this case exclusively under state law to address damages to state natural resources and drinking water. Let me back you up to the disclaimer then. What specifically is your disclaimer? The state of New Jersey is going to disclaim damages to New Jersey natural resources caused by the federal government's use of dioxin-stabilized TCA products, and we specify on page 38 of the brief, and I want to be clear, whether the pollution flowed from the surface or subsurface of those federal properties into any other natural resources. It's going to create a complicated question of proof, for sure, but the state will bear the burden of proof. It will make its proofs with fact and expert evidence. If the jury disagrees with the state, the jury believes, for example, that all of the pollution came from three military bases in New Jersey, then the state will lose, and deservedly so. And if the jury believes that a portion of the pollution comes from those military bases, then damages will correctly be reduced accordingly. That's what another court considering AFFF pollution recently noted out of the District of Connecticut. That's Connecticut versus EIDP. And so the state will bear the burden of proof, but the salient point is that Dow will not have to assert, and no judge or jury will have to evaluate the merits of Dow's federal contractor defense. The disclaimer simply gives it the benefit of that defense and replaces it with an ordinary question, where'd the pollution come from? If the jury says it came from the military bases, the state loses. While the disclaimer is effective, I think that I do want to point this court to the antecedent question of, can Dow allege a former relating to relationship between the state's allegations and the federal government's conduct at all, irrespective of the disclaimer? And it can't. I want to put this court to the County of Montgomery lead-based paint case from a few years ago. And there, this court recognized that while the post-amendment federal officer removal statute is broad, quote, too tenuous, a connection will not suffice. And like this case, and I didn't hear a moment ago, I didn't see it in paragraph 22 of Dow's notice of removal. It is not anywhere in the state's complaint. And I didn't hear it a moment ago saying that Dow sold any dioxane stabilized TCA to a federal facility in New Jersey, said there might be dioxane stabilized TCA there, or there might be a TCA contamination there. But Dow hasn't alleged that. And as this recognized in County of Montgomery, absent any allegation, which is what this court said, that there was lead-based paint was supplied to the specific counties that issue their public housing projects, remains appropriate. And it's appropriate here for the same reason. Now, the court doesn't need to consider Dow's federal defense. But if it does, it's not colorable. And there's really two reasons it's not. The first is that no agency required Dow to use one for dioxane. And while Dow points to patent and says that a defendant might still be acting under a federal officer, even if there's not something done at the the federal contractor defense on the discretionary function exception to governmental immunity. And it's key, because Boyle recognizes that if the federal contractor makes the decision and the federal officers never considered it, then the defense doesn't apply. And so that's the case here. Dow hasn't alleged. Dow, in fact, admits, page 39 of its opening brief, that the government did not specifically direct Dow to stabilize the TCA with dioxane. In fact, if you look at page 231 of the record, is the federal spec, the fed spec, all it says is that the trichloroethane product must be inhibited against the corrosive attack of aluminum alloys. And so without that consideration, there's no significant conflict, as Boyle recognized, because procurement doesn't end the inquiry. So Dow doesn't have a colorable defense for that reason, but it doesn't have a colorable defense for a second reason. And that's that when it submitted the proposed specification to the federal government in 1967, Dow's own words again, page 499 of the joint appendix, the government accepted it with minor modifications. And Dow hasn't alleged to any of those modifications related to the use of dioxane. And so because Dow doesn't have a colorable defense, because Dow can't show it was acting under a federal officer, and because Dow can't show that any of the state's allegations are for or relating to anything the federal government did, remand is appropriate. I see I have a couple minutes, but if the court has questions, I'm happy to answer them. Otherwise, I'm happy to cede my time. Thank you. Thank you, Your Honor. May it please the court, just a few points I'd like to respond to. First and foremost is the disclaimer. As Your Honor's noted, it's not in the complaint. And in a case where the state is seeking billions of dollars in recovery, we think we're entitled to have that both under Royal Canin and as a matter of judicial efficiency in an actual pleading that's going to govern these proceedings. And the state's concession that the court is going to have to determine whether the contamination is, quote, caused by the federal government's use of TCA, that's going to a jury question and complicated issues of proof, establishes this court's jurisdiction, because we are entitled to have a federal court determine the scope of our federal defense. And issues of causation and apportionment associated with one of their aquifers, did this come from the military base or did it come from some other consumer source? Those questions are questions about the scope of our federal defense. This is exactly what the recently held in our 28-J letter that we submitted in the non-AAFF case by 3M. In addition, in Hoboken, the reason the court accepted the disclaimer there is because the impact was de minimis. So you weren't going to have these complicated issues of proof. The state pointed to the Raul decision in the Seventh Circuit, where the court also permitted a disclaimer. And I want to quote what the court allowed in the disclaimer there. The court said the state clearly and unequivocally conceded, one, that it would not seek relief against 3M for mixed PFAS contamination, arising from the Cordova facility. This was a single site case, not the entirety of the state, a single site. It then said a fact finder will not need to apportion the PFAS contamination between sources for the state to recover against 3M for PFAS contamination. A hundred percent of that contamination must be sourced from the Cordova facility. If even a morsel of contamination is not from PFAS produced at the Cordova facility, the state's recovery is barred. That disclaimer is significantly different from the one at page 38 of the state's brief. Moving on to PAP, the state emphasized that there was close supervision with the federal government. Two points I want to make about PAP. The C47 at issue in that case, and this is a quote from this court's decision, was adapted from a previously produced commercial plane for government use. So it was a preexisting commercial product that Boeing adapted for government use, just like the TCA here. In addition, we absolutely do not concede that there is not an unusually close relationship here. I spoke in my opening about the Department of Defense report. It's at JA246. This is what the Department of Defense told Congress. The military services, in coordination with industry, are revising and amending specifications in response to Executive Order 11-282. And that goes on to talk about Rule 66. And they specifically talk about MIL-T-81533, which is the MIL-SPEC at issue here. So this is from the government's own mouth at JA246. Could you elaborate a little bit on how the control, supervision, et cetera, in PAP is analogous to the control supervision in this particular case? Sure. So, Your Honor, the Hoff Affidavit talks about a meeting where industry provided the government with technical information about the product. The government and industry then went back and forth, as revealed in this report, to develop extensive military specifications, which, by the way, are under the Department of Defense's rules, have to be inherently military. The government and the industry went back and forth? Yes, Your Honor. I thought I read something in the appendix that said something like the government accepted with said something like limited modifications or something like that. It didn't sound like a bunch of back and forth. They did accept them with minor modifications, but that followed a meeting, and it followed the coordination with industry that was a central part of the report that the Department of Defense provided to Congress. And I think if we want to have a factual or even a legal dispute with the wasn't sufficiently close. Was this really sold in 1966, or was that the predecessor SA-1192? I'll say the state relies heavily on JA-250, a Dow document. That is a four-paragraph summary of history. It is not some technical document that lays out the history of this product. It does not even mention SA-1192 and SA-1192A, which were predecessor products. Under our allegations, SA-1192A was the one that was used in L.A. County, and then we developed chlorothene VG for use by the government. We can have that factual dispute in court. The point is that these factual disputes have to be resolved in the removing party's favor under the federal officer defense, under the federal officer removal statute, because that determines the scope and availability of our federal defense. I see that I'm out of time, Your Honors. We ask that you reverse the district court and accept the theory of doubts case as pleaded in its notice Thank you. Counsel, thanks for your briefs and your arguments. We're going to ask that a transcript of this argument be prepared, and we'll ask that you folks split the costs, check in with Ms. Ritz about how to go about ordering the transcript. Thank you very much.